O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **VIRGINIA SURETY CO., INC.,** § | |
| *Plaintiff*, § | |
| § | CIVIL ACTION NO. 5:05-cv-101 |
| v. § | |
| § | |
| **GEORGE ROYLE WRIGHT d/b/a** § | |
| **WRIGHT & ASSOC. GMAC REAL** § | |
| **ESTATE,** § | |
| *Defendant*. § | |
| § | |

## **OPINION AND ORDER**

Pending before the Court is Plaintiff Virginia Surety Co., Inc.'s ["Surety"] Motion for Summary Judgment as to their declaratory judgment claim against Defendant Wright & Associates ("Wright,") [Dkt. No. 22], and Defendant Wright's Cross-Motion for Summary Judgment against Surety. [Dkt. No. 25]. Upon due consideration of both Motions, the responsive filings, and the governing law, the Court GRANTS Plaintiff's Motion, and, accordingly, DENIES Defendant's Motion.

### I.   PROCEDURAL HISTORY AND RELEVANT FACTS

Defendant Wright is currently being sued by a third party, Laredo Independent School District (LISD). [Dkt. No. 22, Ex. C]. Plaintiff Surety brings this suit seeking a declaration that, under the insurance policy it issued Wright, it is not obligated to defend or to indemnify Wright against LISD's claims. [Dkt. No. 22 at 4].

In August of 2000, Wright entered into a real estate "broker/client" relationship with LISD, by which it would assist the latter in acquiring certain real properties by conducting "feasibility studies," "negotiat[ing] on behalf of LISD," and otherwise "act[ing] as LISD's representative . . . ." [Dkt. No. 22, Ex. C at 3]. LISD alleges that Wright made fraudulent misrepresentations about the value and condition of several of the aforementioned properties, causing LISD to pay well over market value for them, an injury for which it seeks damages. [Dkt. No. 22, Ex. C at 3-6].

In 2004, Wright purchased from Surety a "Real Estate Errors and Omissions Insurance Policy ("the Policy,") which contains a "claims-made" provision, the only provision relevant for present purposes. [Dkt. No. 22, Ex. A]. Claims-made provisions are generally defined as those covering "occurrences which may give rise to a claim that *comes to the attention of the insured . . . during the policy period*" as opposed to "occurrence policies," which generally cover "all claims based on an event occurring during the policy period, regardless of whether the claim or occurrence itself is brought to the attention of the insured . . . during the policy period." *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 918 (Tex. App.—Fort Worth 1988, writ denied) (emphasis added); *see also St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n.3 (1978); *William M. Mercer, Inc. v. Woods*, 717 S.W.2d 391, 393 (Tex.App.—Texarkana 1986, writ granted), *rev'd on other grounds*, 769 S.W.2d 515 (Tex. 1988). The specific claims-made provision at issue here indemnifies Wright for "wrongful conduct" committed by Wright only if all of several conditions are satisfied. [Doc. No. 22, Ex. A at 9]. Of these conditions, two are of central importance for present purposes, namely:

> **Condition 2**, that "prior to the inception date of th[e] policy period no Insured had knowledge of such wrongful act and had no basis to reasonably anticipate a claim that would be covered by the policy;" and

> **Condition 3**, which, consistent with most claims-made provisions, requires that "the claim arising out of the wrongful act [be one that] is first made against any Insured during the policy period . . . ."

[Doc. No. 22, Ex. A at 9].

In response to LISD's claims, Wright has sought defense and indemnification from Surety under the claims-made provision. Surety moves for summary judgment, arguing that, based on facts not genuinely in dispute, Wright "as a matter of law" cannot satisfy either of the above Conditions and, therefore, Surety is entitled to a declaration to the effect that it owes no duty to defend or indemnify Wright. [Dkt. No. 22].

Central to Surety's argument is the fact that LISD sent Wright a demand letter on October 27, 2003, before the Policy took effect on March 7, 2004.[1] [*See* Dkt. No. 22 at 5; Dkt. No. 24, ¶ 9; Dkt. No. 22, Ex. A at 34 (Demand Letter)]. Also central, and undisputed, is that Wright's employee, Nora Manzo, signed for the demand letter at Wright's office. [Dkt. No. 24 at 5].

Surety argues, in light of the above, that Wright had "notice" and, therefore, "knowledge" of a wrongful act alleged against him and thus had a "basis to reasonably anticipate a claim" before the Policy took effect, which would preclude coverage under Condition 2. [Dkt. No. 22 at 11-15]. However, this opinion will focus on Surety's Condition 3 argument, the thrust of which is that Wright "received" a "claim" before the policy took effect, thereby precluding coverage as a matter of law. Of course, a necessary premise of Surety's argument, and one on which Surety elaborates extensively, is that, under principles of Texas agency law, Manzo's

---

[1] At one point in his Response, Wright alludes to the "possibility" that the envelope in which the demand letter was ostensibly delivered did not actually contain such. However, Wright does not advance this argument directly, and certainly provides no evidence to support such a "possibility." Indeed, the slip Manzo signed was labeled "demand letter," and that letter is reproduced in full in the record. [Dkt. No. 22, Ex. A at 34]. Additionally, Wright himself has recognized the "receipt of the [demand letter] by Nora [Manzo]" in an email Wright sent to Surety in July of 2004. [Dkt. No. 28, Ex. 1 at 13]. Thus, the Court will ignore the strange and passing suggestion in paragraph 40, as it deserves no weight in an analysis concerned only with *genuine* issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

3

signature for the demand letter, sent via certified mail, constitutes "receipt" by Wright thereof. [Dkt. No. 22 at 12-15].

Wright, in turn, argues that under general rules of contract construction applicable in interpreting rights and duties under insurance policies, the Court cannot "read in" the caveat that *constructive* receipt is encompassed by a plain reading of the contract term "receipt." [Dkt. No. 24 at 14 -16]. Wright argues that since, at the very least, the terms are ambiguous, there exist "fact issues" making summary judgment inappropriate. [*See*, *e.g.*, Dkt. No. 24, ¶ 27].

## II.    GOVERNING LAW

### A. Declaratory Judgment and Summary Judgment Standards

Surety brings this suit under the Federal Declaratory Judgment Act, codified as 28 U.S.C. § 2201, which, in relevant part, provides:

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The declaratory judgment "procedure is remedial and is to be liberally construed to achieve its wholesome and salutary purpose," *Allstate Ins. Co. v Employers Liability Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971), which is to "provid[e] [a] speedy and inexpensive method of adjudicating legal disputes without invoking coercive remedies," *Sherwood Medical Industries, Inc. v. Deknatel, Inc.*, 512 F.2d 724, 729 (8th Cir. 1975).

Federal Rule of Civil Procedure 56(c) provides for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Id.* at 261. The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Assuming no genuine issue exists as to the material facts, the Court will then decide whether the moving party shall prevail solely as a matter of law. *Id.* The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

In order for Wright to show that he is indeed entitled to defense and indemnification from Surety, he would, in a suit against Surety, bear the initial burden of showing that his claim is potentially within the Policy's coverage. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citing *Employers Casualty Co. v. Block*, 744 S.W.2d 940, 945 (Tex. 1988)). Thus, accurately stated, Surety must show the absence of a genuine issue of material fact as to whether Wright's claim can trigger coverage under the terms of the Policy. A genuine issue of material fact exists only if "a reasonable jury could return a verdict for the

non-movant." *See Id.*, 261 F.3d at 471. Thus, the Court should grant Surety's Motion if Wright has no realistic chance of qualifying for defense and indemnification.

### III.  DISCUSSION

Surety can satisfy its summary judgment burden by showing, as a matter of law—*i.e.*, based on facts not genuinely in dispute—that Wright cannot satisfy *any single* Condition it must meet before triggering the claims-made provision, as such a finding would logically and absolutely preclude qualification of Wright's claim under the Policy. Accordingly, because Condition 3 would pose the most significant challenge to Wright in showing that his claim triggers coverage, the Court will first address whether there is a genuine issue of material fact as to whether Wright could show that he is able to satisfy that Condition.

As stated above, Condition 3 requires that "the claim arising out of the wrongful act [be one that] is first made against any Insured during the policy period . . . ." [Dkt. No. 22, Ex. A at 9]. The parties do not dispute that Condition 3 means that the Policy must be in effect when the "claim" against the Insured is made *for the first time*. Further, for the purposes of Condition 3, the Policy defines the term "claim" to mean "a demand for money . . . *received* by any Insured for damages including, but not limited to, the service of a lawsuit . . . alleging a wrongful act arising out of the performance of professional services." [Dkt. No. 22, Ex. A at 13 (emphasis added)]. Importantly, there is no dispute that the demand letter constitutes a "claim" as the term is used in the Policy so long as the demand letter is deemed to have been "received" by Wright.[2] [*See*, *e.g.*, Dkt. No. 24, ¶25]. Thus, with regard to Plaintiff's Condition

---

[2] Again, *receipt* of a "demand for money" is a necessary aspect of a "claim" as defined in the Policy. In his Cross-Motion for Summary Judgment, Wright makes the conclusory statement that the suit filed against it by LISD, rather than the demand letter, constitutes LISD's first "claim." [Dkt. No. 25 at 11]. Wright's suggestion that the demand letter may not be a "claim" is best read not as a challenge to the *substance* of the demand letter

6

3 argument, the Court must determine if Wright's admission that his employee signed for the demand letter means, as a matter of law, that Wright "received" it by virtue of Manzo acting as Wright's agent.[3]

**A.  Focusing the Inquiry—The Centrality of Agency Law**

Rather than focusing primarily on agency law in opposition to summary judgment, Wright advances mostly arguments of contract construction, which the Court will dispose of before delving into its agency analysis. The first one, which is rather specious, is that the crucial contract term "receipt" is ambiguous because Webster's Dictionary provides more than one definition thereof. [Dkt. No. 24, ¶ 38].

"An ambiguity does not arise merely . . . because the parties advance conflicting contract interpretations". *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998). Rather, both advanced interpretations must be reasonable. *Id.* Additionally, "courts should not strain to find such ambiguity . . . even when the result is an apparently harsh consequence to the insured." *Yancey*, 755 S.W.2d at 918. Thus, a mere theoretical possibility of ambiguity does not suffice to trigger an elaborate construction analysis. Indeed, Webster's Dictionary provides multiple definitions for almost every verb in the English language. If this were enough to create ambiguity, it is difficult to imagine any contract provision, no matter how deliberately crafted, that would reflect any facially "plain" meaning.[4] Thus, whatever may be the exact parameters of the word "receive," the Court has no doubt that Manzo's assumption of physical possession of the demand letter by signing a certified "return *receipt*"

---

as a "demand for money," but rather a reiteration that Wright does not believe he *received* that demand when Manzo signed for it.

[3] Interestingly, Wright makes the blatantly false assertion that "[i]t is . . . undisputed" that Wright and Manzo "never received" LISD's demand letter. [Dkt. No. 25, ¶ 21]. This, of course, is a key issue.

[4] Wright also invokes several interpretative doctrines which operate to lend an insured the "benefit of the doubt" in construing insurance policies. However, the Court need not address these principles, as "[t]hese special rules favoring the insured are only applicable where there is an ambiguity in the policy . . . ." *Yancey*, 755 S.W.2d at 918.

slip, [Dkt. No. 22, Ex. A at 38], compels the "plain" conclusion that Manzo "received" it. In fact, Wright himself, in an email to Surety (reproduced in the record,) has recognized the "receipt of the [demand] letter by Nora [Manzo,]" to use his words. [Dkt. No. 28, Ex. 1 at 13]; *see also Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 642-643 (Tex. App.—Austin 1999, no pet.) ("[A]n attorney is deemed to have received notice when the *receipt for the notice is signed* by that attorney's agent or employee.") (emphasis added). It would be no competent answer to argue that Wright was speaking casually when stating such, as this "ordinary" and "plain" use of the word "receipt" is precisely the meaning to be assigned to contract terms under Texas law.

Wright's second construction argument is equally unpersuasive, but a bit more involved. Wright is of the position that even if Manzo acted as Wright's agent in "receiving" the demand letter, Wright as principal still cannot be deemed to have "received" it unless the term "receipt" in the Policy can be read to include "*constructive* receipt." [*See*, *e.g.*, Dkt. No. 24 at ¶ 21, 25]. Both parties confuse the issue by arguing over this matter. That this argument misses the point is belied by its own logical extension: that agency law cannot be determinative in contract disputes unless the terms of the contract incorporate that law.

Wright is correct that, under Texas law, courts are to interpret insurance policies according to general rules of contract interpretation, *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, (1998), and that, accordingly, the Policy terms should be assigned their "plain meaning," *Texas Farm Bureau Mut. Ins. Co. v. Tatum*, 841 S.W.2d 89, 93 (Tex. App.—Tyler 1992, writ denied); *see also Harken Exploration Co.*, 261 F.3d at 471 (Reiterating the so called "eight corners rule," which provides that "an insurer's duty to defend is usually determined solely from the allegations in the most recent petition and the language

of the insurance policy."). Therefore, the Court should not supplement the Policy terms and thereby artificially expand their plain meaning. However, a finding that Wright received the demand letter via Manzo's agency would not require the Court to read into the contract the notion of "constructive receipt."

Importantly, when courts use agency law to determine the correct outcome in contract disputes, they do not supplement the given *contract* with agency law—they supplement contract *law* with agency law. This is evidenced by, for example, the American Law Institute's comment that "[t]he rules stated in the Restatement [of Contracts] . . . are supplemented by the law of agency, and in the absence of [a] contrary statement it is assumed that any necessary act may be performed on behalf of a contracting party by his agent." RESTATEMENT (SECOND) OF CONTRACTS § 52 (1981). Other treatises infuse insurance law with general agency principles, stating, for example, that "[i]n accord with general principles of agency law, the insured is bound by the authorized acts of his agent." COUCH ON INSURANCE 2d §25:24 (1985). Thus, if the Court generously assumes[5] for the moment that Wright's receipt of the demand letter via Manzo's agency is "constructive" rather than "actual" receipt, a finding that Wright thusly "received" the demand letter would not be a conclusion as to the meaning of the contract terms *per se*, but rather a conclusion as to *whether the parties' conduct should be perceived by the Court as conforming with that meaning*.

---

[5] "Generous" because, even assuming that the term "receipt" means exclusively *actual* receipt, the type of "receipt" which attached to Manzo as agent would be imputed to Wright, which in this case is best deemed actual, not constructive, receipt. *See Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 773 (4th Cir. 1995) (recognizing that "[u]nder the general rule, the knowledge imputed [from the agent] to the principal is considered actual knowledge, not constructive."); *Plitt v. Kellam*, 222 Md. 383, 391 (Md. 1960) (stating that notice by an agent to his principal is "actual, and not merely constructive notice to him, for the principal is bound by and affected with notice to his agent . . . ."); *Hillyer v. Brogden*, 67 Ga. 24, 26-27 (Ga. 1881) ("[N]otice to an agent in matters connected with his agency, and within its scope, is actual, not bare constructive, notice to the principal"); *Interstate Life & Acci. Co. v. Wilson*, 52 Ga. App. 171, 178 (Ga. Ct. App. 1935) ("That which clearly does not amount to positive knowledge may often, in a legal sense, constitute actual notice."); *Nelson v. Superior Court*, 89 Cal. App. 4th 565, 574-75 (Cal. Ct. App. 2001).

Therefore, there is no need for the Court to engage in construction analysis for the purpose of determining if "receipt" in the contract may be read to include "constructive receipt." Rather, the issue is whether, based on the facts not genuinely in dispute, (1) Manzo "received" the demand letter per the plain meaning of that term in the contract; and, if so, (2) whether she was acting as Wright's agent when she did. As established above, the Court concludes that there is no genuine issue of material fact as to whether Manzo "received" the demand letter from LISD. Therefore, the controlling inquiry is solely whether Manzo's receipt should be considered Wright's receipt under agency law.

### B. Agency Analysis

Where the facts supporting an alleged agency relationship are not in dispute, the question of whether those facts actually demonstrate an agency relationship "is a question of law for the court." *Campbell v. Hamilton*, 632 S.W.2d 633, 635 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). *See also Minneapolis-Moline Co. v. Purser*, 361 S.W.2d 239, 241-42 (Tex. App.—Dallas 1962, writ ref'd n.r.e.) ("The question whether an agency relation exists between an alleged principal and agent is a question of law that must be determined solely by the trial court, in the light of the relations of the parties under the agreement between them or in view of their acts and conduct."); *id.* ("The province of the jury in this connection is to determine only whether or not certain facts exists—not whether, if such facts do exist, they are legally sufficient to constitute the alleged agency".).

Texas courts have stated that, in order for an agency relationship to exist,:

> there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression in either words or conduct between them.

*Elite Towing*, 985 S.W.2d at 643; *see also Grissom v. Watson,* 704 S.W.2d 325, 326 (Tex. 1986) (same). Further, "[a]n agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties." *Elite Towing*, 985 S.W.2d at 643; *see also Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757, 760 (Tex. App.—Houston [14th Dist.] 1997, no writ); *Stanford v. Dairy Queen Prods.*, 623 S.W.2d 797, 800-01 (Tex. App.—Austin 1981, writ ref'd n.r.e.).

In *Elite Towing*, the court held that the individual who signed for the document on behalf of the appellant acted as an agent in doing so because that signatory had repeatedly signed for and received mail on behalf of the appellant, over which the latter never objected. *Elite Towing*, 985 S.W.2d at 643. Of primary importance to the court's conclusion was the appellant's failure to argue that the signing party was not *authorized* to accept such documents on his behalf. *Id.* In distinguishing between cases invoked by the appellant—cases in which notice or receipt were deemed invalid—the court noted that, in those cases, the mail had been received and signed for by parties who had no explicit or apparent authority to do so.[6] *See id.* at 643 (citing *United National Bank v. Travel Music of San Antonio, Inc.*, 737 S.W.2d 30 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) (Notice deemed ineffective when mail was signed for by an individual whose identity was unknown)); *Thompson v. Thompson*, 487 S.W.2d 436 (Tex. Civ. App.—Houston [1st Dist.] 1972, no writ) (same); *City of Houston v. Riner*, 896 S.W.2d 317 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (holding notice

---

[6] Wright argues that cases such as *Elite Towing* are not on point because they dealt with the issue of attorneys "receiving pleadings and notices in the litigation context pursuant to Texas Rule of Civil Procedure 21[(a)]." [Dkt. No. 24 at 19]. However, there is nothing in these cases to suggest that the respective agency analyses depended on this narrow and incidental backdrop. Indeed, these opinions relied upon precedent expounding agency law in other contexts. For example, in reciting the controlling definition of an agency relationship, the *Grissom* court relied on *First Nat'l Bank*, a case that did not deal with attorney notification.

invalid where such was signed for by security guard, who admitted that he had no authority to do so on behalf of addressee).

The record contains a copy of a receipt for certified mail, dated October 28, 2005, which Manzo signed in order to obtain the demand letter. [Dkt. No. 22, Ex. A at 38]. The slip which Manzo signed reveals the phrase "demand letter" typed on the front, just below Manzo's signature. [Dkt. No. 22, Ex. A at 38]. At the time she signed for the demand letter, Manzo had been an employee of Wright since 1996. [Dkt. No. 22, Ex. E at 4-6]. In her deposition, she testified that she spent most of her on-duty hours at Wright's office, [Dkt. No. 22, Ex. E at 8], and that Wright would physically receive the mail "hardly ever," since he was out of the office most of the time "doing appraisals." [Dkt. No. 22, Ex. E at 10]. Wright, in his deposition, corroborated this claim, stating that he was there to physically receive the mail only on Saturdays. [Dkt. No. 22, Ex. F at 4-6]. Although Wright attempts to emphasize in his Response that Manzo's "responsibilities did not include receiving the mail," Wright's deposition testimony belies the subtle play on words inherent in this assertion, as not only did Wright therein admit that Manzo was not prohibited from receiving the mail, [Dkt. No. 22, Ex. F at 11], he specifically agreed that Manzo "should" sign for a certified letter if no other person is present to do so. [Dkt. No. 22, Ex. F at 14]. Thus, notwithstanding a formal statement as to Manzo's job duties, [*see* Dkt. No. 26, Ex. 9 at 8], the Court cannot escape the obvious conclusion that Manzo was authorized to sign for the October 2003 demand letter from LISD, and, indeed, "should" have done so according to Wright. The relationship between Wright and Manzo closely parallels the widely accepted definition of an agency relationship in Texas, as quoted in *Elite Towing*, *supra*. Accordingly, Manzo received the demand letter on behalf of Wright, and, for the purposes of Condition 3, the Court concludes

12

that, as a matter of law, a "claim," as defined by the Policy, was "first made" against an "Insured" before the Policy period began to run, which decidedly disqualifies Wright's claim from coverage under that Condition. That this conclusion is obvious even to Wright is belied by his early statement to Surety that he "assume[d] that the receipt of the letter by Nora [Manzo] is constructive delivery and that as such [Surety] has no obligation to do anything with this case." [*See* Dkt. No. 28, Ex. 1 at 13 (Wright's email message to Surety representative reproduced in full)].

In his Response brief, Wright spends much energy arguing that Condition 2 is vague under contract law, and therefore is either invalid or at least gives rise to a genuine fact issue unfit for summary judgment. [Dkt. No. 24, ¶¶ 26-33]. However, because the Court finds that Surety has demonstrated the absence of a genuine issue of material fact as to whether Wright's claim can satisfy Condition 2, the Court need not continue its analysis.

## IV. CONCLUSION

The Court remains cognizant of the procedural posture of this case; the burden indeed is borne by Surety to show that it is entitled to judgment as a matter of law. *See Liberty Lobby*, 477 U.S. at 263. To defeat this showing, Wright has argued that "the competent summary judgment evidence establishes at the very least . . . fact issues" with regard to matters such as "the scope of any agency relationship between Manzo and [Wright] such that summary judgment is improper." [Dkt. No. 24, ¶ 35]. The Court disagrees. This case is precisely the type of case contemplated by Rule 56 of the Federal Rules of Civil Procedure—one that may me disposed of based solely on findings of law, rather than fact. As such, the Court would disserve the purpose of Rule 56 in hesitating to grant summary judgment when the competent

summary judgment evidence shows that no reasonable factfinder could render a verdict in favor of the non-movant.

Based on the legal finding that Manzo was acting as Wright's agent when she signed for the demand letter from LISD, the Court finds that Wright did indeed "receive" a "claim," as defined in the Policy, before the Policy began to run, and, thus, Wright as a matter of law cannot show that LISD's Suit against him triggers the Policy's protection. Plaintiff's Motion for Summary Judgment is **GRANTED**. Defendant's Cross-Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED.

Done this 9th day of November, 2006, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**